FILED
2026 Apr-07  PM 03:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

CEDRIC WARREN,

     Plaintiff,

v.

DEPARTMENT OF DEFENSE,
*et al.*,

     Defendants.

Case No. 5:24-cv-1456-HDM

## MEMORANDUM OPINION AND ORDER

This case is before the court on Defendant Pete Hegseth's motion to dismiss Plaintiff Cedric Warren's Second Amended Complaint.[1] (Doc. 35). In his Second Amended Complaint, Mr. Warren, who is proceeding *pro se*, sues his former employer, the Defense Intelligence Agency, for retaliation, hostile work environment, and race discrimination under Title VII; disability discrimination under the Rehabilitation Act; and Fifth Amendment violations by employees of the Defense Intelligence Agency. (Doc. 27, at 8–10). As set forth more fully herein, Secretary Hegseth's motion is due to be **GRANTED IN PART** and **DENIED IN PART**.

---

[1] Secretary Hegseth is the only defendant properly included in this action. *See* Section II, *infra*.

## BACKGROUND

Plaintiff Cedric Warren was employed by the Defense Intelligence Agency (the "DIA") from January 2010 to May 20, 2025. (Doc. 35-1 at 1–2). The DIA is a subdivision of the Department of Defense (the "DOD"), (doc. 27, ¶ 9), an agency of the United States government, *id.* ¶ 8. Mr. Warren sues Defendant Pete Hegseth in his official capacity as the United States Secretary of Defense.[2] *Id.* ¶ 10. During his fifteen years of employment with the DIA, Mr. Warren worked exclusively in the State of Maryland. *Id.* at 2. Between January 2010 and April 2022, he worked at the Naval Support Facility Indian Head ("Indian Head") in Charles County, Maryland. *Id.* at 4. From April 2022 until his termination in May 2025, Mr. Warren's duty station was Maryland Square 2 ("MS2") in College Park, Maryland. (Docs. 35-1 at 1–2).

Mr. Warren is immunocompromised and had an approved medical exemption from the COVID-19 vaccine. (Doc. 27, ¶ 19). On February 10, 2022—Mr. Warren's second day back working in-person at the Indian Head facility under a new protocol for high-risk employees—he was engaged in a discussion about a reasonable accommodation for his workspace. *Id.* The facility manager, Tanya Blackstone,

---

[2] Since the filing of this case, the "Department of Defense" was renamed "Department of War," and Secretary Hegseth's title was changed to "Secretary of War." *See* Matthew Olay, *Trump Renames DOD to Department of War*, U.S. Department of War (Sep. 5, 2025), https://www.war.gov/News/News-Stories/Article/Article/4295826/trump-renames-dod-to-department-of-war/. The court refers to these defendants by their original titles because that is how they are named in the Second Amended Complaint. (*See* Doc. 27).

claimed that she felt threatened by Mr. Warren, leading to the police being called to the facility to have Mr. Warren escorted out. *Id.*, ¶ 20. The Indian Head security investigation, completed on April 6, 2022, cleared Mr. Warren of any claims of workplace violence or threats. *Id.*, ¶ 21. Despite this, leadership continued to pursue allegedly discriminatory actions and unwarranted disciplinary measures against Mr. Warren. *Id.*, ¶ 21.

In an email communication, Mr. Warren's supervisor, Villa Sara, who was aware of his medical exemption, suggested he should still consider getting the COVID-19 vaccine and that, if he was "not comfortable with that, perhaps [he] should find another job." *Id.*, ¶ 23. Mr. Warren's other supervisor, Anthony Cooper, also stated that, if Mr. Warren needed the accommodations he was requesting, "then [he] should find another job." *Id.* Following the Indian Head incident, Mr. Warren's system access was revoked, he was placed on leave without pay, and he was eventually separated from the agency. *Id.*, ¶ 24.

In 2022, Mr. Warren's spouse, also a DIA employee, accepted a new position within the DIA in Huntsville, Alabama, requiring the family to relocate. *Id.*, ¶ 12. Mr. Warren requested a spousal accommodation on June 10, 2022, which would allow him to accompany his spouse by way of a permanent change of station from

3

Maryland to Huntsville. *Id.*, ¶ 13; (Doc. 35-4). His request was denied,[3] (doc. 35-5), although Mr. Warren was approved for extended leave without pay from October 1, 2022, through September 30, 2023, by the DIA's Department of Human Resources, (doc. 35-1 at 2). Accordingly, Mr. Warren and his family sold their home and relocated to Huntsville. (Doc. 27, ¶ 14).

Mr. Warren's leave without pay was reapproved from October 1, 2023, until September 30, 2024. (Doc. 35-1 at 2). Throughout this time, Mr. Warren attempted to create a telework arrangement with the DIA to allow him to work from Huntsville, but leadership systematically obstructed and delayed the finalization of Mr. Warren's telework agreement. (Doc. 27, ¶ 16). As part of this obstruction, leadership began spreading a false narrative about Mr. Warren, claiming he had unilaterally moved to

---

[3] Mr. Warren alleges that the "DIA's office of Human Resources (OHR) formally approved Mr. Warren for a spousal accommodation, permitting him to relocate to Huntsville while a suitable position was identified . . . ." (Doc. 27, ¶ 13). Generally, the court must accept Mr. Warren's allegations as true at the motion-to-dismiss stage. *See Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). However, in resolving a motion to dismiss, a court "may consider exhibits attached to a motion to dismiss without converting the motion into one for summary judgment if the exhibits are (1) central to the plaintiff's claim and (2) their authenticity is not disputed." *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1162 (11th Cir. 2019). And "if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." *Hoefling v. City of Mia.*, 811 F.3d 1271, 1277 (11th Cir. 2016). *See also Baker v. City of Madison*, 67 F.4th 1268, 1277–78 (11th Cir. 2023). Here, Secretary Hegseth has introduced a communication made by the DIA to Mr. Warren clearly denying his spousal accommodation request. (Doc. 35-5). While Mr. Warren cites multiple exhibits to support his contention that the DIA formally approved his request, (doc. 27, ¶ 13 (citing "Ex. A; Ex. F; Ex. K")), none of those exhibits appear to be attached. Regardless, the authenticity of Secretary Hegseth's proffered exhibits is uncontested, and because Mr. Warren's claims depend on DIA's actions surrounding his move, they are central to his claim. They clearly contradict Mr. Warren's Complaint, and the court considers them.

Huntsville without approval, verbally assaulted another employee, and had been removed from a facility for refusing to leave. *Id.*

The DIA denied Mr. Warren's request for a third extension of leave without pay, which would have granted him leave from October 1, 2024, through September 30, 2025. (Doc. 35-1 at 2). Because he remained in Huntsville rather than reporting to MS2 in Maryland, Mr. Warren was "AWOL" (absent without leave) from the time his leave without pay ended on September 30, 2024, until his termination on May 20, 2025. (Doc. 35-3). The DIA sent Mr. Warren a termination warning on or around March 20, 2025. (Doc. 35-1 at 8). Mr. Warren was terminated in May 2025. (Doc. 35-3).

Mr. Warren does not allege that any decisions regarding his employment were made by anyone outside of Indian Head, MS2, or Washington, D.C., (*see* doc. 27), and Secretary Hegseth alleges that all employment decisions regarding Mr. Warren were made at DIA headquarters in Washington, D.C., (doc. 35-2, ¶ 15).[4] Mr. Warren alleges that he inquired about reassignment to, or telework from, a DIA office in Huntsville, Alabama, or Joint Regional Intelligence Centers in New Orleans,

---

[4] Although the court would not generally consider, outside of limited exceptions, a defendant's allegations at the motion to dismiss stage, "[t]he Court may make factual findings necessary to resolve motions for improper venue, as long as the resolution of the factual disputes raised under Rule 12(b)(3) do not amount to an adjudication on the merits of the case." *Micor Indus., Inc. v. Mazak Corp.*, No. 5:17-cv-1408, 2018 WL 804303, at *4 (N.D. Ala. Feb. 9, 2018) (citing *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008)). Thus, the court may consider Secretary Hegseth's conflicting—or, as here, uncontested—facts for purposes of establishing venue.

5

Louisiana, and Birmingham, Alabama, but these inquiries were denied. *Id.*, ¶ 13. The parties agree that Mr. Warren never worked for a DIA facility in the Northern District of Alabama, *id.*, ¶ 16, and Mr. Warren does not allege that he did so, (*see generally* doc. 27). Mr. Warren does not allege that he officially applied for a position with the DIA in the Northern District of Alabama, nor does he allege any personnel action by the DIA in the Northern District of Alabama. *Id.*

On May 3, 2022, Mr. Warren filed with the DIA a formal Equal Employment Opportunity (EEO) Complaint of discrimination on the bases of race and disability. (Doc. 35-7 at 1). Mr. Warren alleged four discrete events constituting discrimination: (1) on February 10, 2022, Tanya Blackstone, the Indian Head site manager, and Patricia Lehman, the space coordinator, complained about Mr. Warren's air purifier and use of Lysol and requested that Mr. Warren be moved elsewhere; (2) on February 10, 2022, Ms. Blackstone and Ms. Lehman called base police, claiming Mr. Warren had threatened them; (3) on April 12, 2022, one of Mr. Warren's supervisors informed him that his desk was removed from Indian Head, and Mr. Sara informed Mr. Warren that he was being moved to a new duty station; and (4) on or around April 12, 2022, Mr. Warren's direct supervisor at MS2, Mr. Anthony Cooper, denied his request to telework from Alabama as a reasonable accommodation. (Doc. 35-7 at 1–2). The DIA dismissed the formal complaint for failure to file within fifteen days of receiving the Notice of Right to File a Formal Complaint received by Mr.

6

Warren via email on April 11, 2022, pursuant to 29 C.F.R. §§ 1614.107(a)(2) and 1614.106. (Doc. 35-8). The EEOC affirmed the Agency's dismissal on September 28, 2022, *id*. at 2, and informed Mr. Warren that he had "the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date" that he received the decision, *id*. at 4. Mr. Warren did not file a civil action within ninety days.

On October 21, 2022, Mr. Warren filed a second formal EEO Complaint of discrimination on the bases of race, disability, and retaliation resulting from six alleged events: (1) on July 1, 2022, his supervisor, Mr. Anthony Cooper, denied Mr. Warren's request to telework as a reasonable accommodation; (2) on August 17, 2022, Mr. Sara denied Mr. Warren's request to telework as a spousal accommodation; (3) in September 2022, Dr. Jay Phipps (Mr. Warren's Division Chief at MS2) stonewalled communication with Mr. Warren and refused to participate in Alternative Dispute Resolution after learning of the first EEO complaint; (4) on September 14, 2022, Dr. Phipps denied a billet move that would have resolved Mr. Warren's spousal accommodation request; (5) in October 2022, Dr. Phipps caused Mr. Warren's application to a position in Huntsville, Alabama, to be declined; and (6) in October 2022, Mr. Cooper contacted Mr. Warren at least four times while Mr. Warren was on leave concerning Mr. Warren's performance evaluation and objectives. (Docs. 35-9; 35-10 at 1). The DIA subsequently

investigated Mr. Warren's allegations in the second EEO Complaint and forwarded to him its Report of Investigation on August 16, 2023. (Doc. 35-10 at 2). Ten days later, Mr. Warren requested a hearing before an EEOC administrative judge. *Id*.

On October 28, 2024, before the hearing took place, Mr. Warren filed this federal lawsuit. (*See* Doc. 1). On December 10, 2024, the assigned EEOC administrative judge issued a decision granting summary judgment in favor of the DIA. (Doc. 35-14). On December 23, 2025, Mr. Warren filed an appeal with the EEOC Office of Federal Operations. (Doc. 35-15). On December 31, 2025, the Agency issued its Final Order, adopting the administrative judge's decision, and forwarded the decision to Mr. Warren via email. (Doc. 35-10 at 2, 6). Following Mr. Warren's protected EEO activity in submitting his two discrimination claims, the DIA engaged in allegedly retaliatory adverse actions including blocking his reassignment efforts and creating false narratives that interfered with his ability to transfer to other roles within the agency. (Doc. 27 at 26).

This matter is presently before the court on Secretary Hegseth's motion to dismiss, in which he argues that Mr. Warren has not complied with the statutory exhaustion and timing requirements for employment actions. (Doc. 35).

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "[C]omplaints alleging discrimination . . . must meet [this] plausibility standard . . . ." *Henderson v. JP Morgan Chase Bank, N.A.*, 436 F. App'x 935, 937 (11th Cir. 2011) (per curiam) (internal quotation marks omitted). "Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015) (internal quotation marks omitted). Similarly, a formulaic recitation of the elements of a cause of action is inadequate. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In considering the facts, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must merely produce enough facts to "raise a reasonable expectation that discovery will reveal evidence" of the necessary elements. *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556). The pleading standard "requires only a plausible short and plain statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). At this stage, the issue is "not whether [the plaintiff] will ultimately prevail . . . but whether his complaint was sufficient to cross the federal court's threshold." *Id.* (internal quotation marks and citations omitted).

## ANALYSIS

In his Second Amended Complaint, Mr. Warren asserts four claims against Defendants Pete Hegseth, the Department of Defense, and the Defense Intelligence Agency: (1) retaliation in violation of Title VII, (2) discrimination on the bases of race and disability, (3) a hostile work environment, and (4) Fifth Amendment due process. (Doc. 27, ¶¶ 28–46). Before considering the merits of Secretary Hegseth's Motion to Dismiss, (doc. 35), the court must address the threshold questions of venue and the proper defendant in this matter.

First, the only proper defendant here is Secretary Hegseth. Second, because the court finds venue plausible based on Mr. Warren's allegations, and because resolving the remaining disputed facts would amount to an adjudication on the merits of the case, venue is sufficiently alleged. Third, Mr. Warren's retaliation claim may proceed solely on the basis of his termination, and Mr. Warren's race discrimination claim may proceed solely on the basis of the DIA's impeding his telework and reassignment efforts. Mr. Warren's retaliation and race discrimination claims are due to be dismissed as to all other bases, and Mr. Warren's disability discrimination, hostile work environment, and Fifth Amendment claims are due to be dismissed in full.

## I. Venue

"Rule 12(b)(3) states that a party may move to dismiss a case for 'improper venue.'" *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). "The Court may make factual findings necessary to resolve motions for improper venue, *as long as the resolution of the factual disputes raised under Rule 12(b)(3) do not amount to an adjudication on the merits of the case*." *Micor Indus., Inc. v. Mazak Corp.*, No. 5:17-cv-1408, 2018 WL 804303, at *4 (N.D. Ala. Feb. 9, 2018) (citing *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008)) (emphasis added). "The venue provisions of [42 U.S.C.] § 2000e-5(f)(3) were intended to be the exclusive venue provisions for Title VII employment discrimination actions and . . . the more general provisions of [28 U.S.C.] § 1391 are not controlling in such cases." *Pinson v. Rumsfeld*, 192 F. App'x 811, 817 (11th Cir. 2006) (per curiam). The burden to show proper venue in the chosen forum rests on the plaintiff. *Id.* Title VII's venue clause provides that claims for employment discrimination,

> [M]ay be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, *or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice*, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3) (emphasis added).

11

Mr. Warren argues that venue properly lies in the Northern District of Alabama because, but for the alleged unlawful employment practice of the DIA, he would have worked in this judicial district. (Doc. 37 at 2). The DIA counters that because it denied Mr. Warren's reassignment outside of the State of Maryland—including potential relocation to Huntsville, Alabama—Mr. Warren could not have worked in this judicial district, and thus venue is improper. (Doc. 35 at 2–3). But one of Mr. Warren's primary arguments is that this very denial of his reassignment was discriminatory and retaliatory, and that this was a major factor in the constructive termination of his employment. (*See* Doc. 27 at 8; Doc. 35 at 18; Doc. 38 at 3). Indeed, given the claims that are dismissed by this Order, *see infra*, Mr. Warren's case depends nearly in its entirety on these arguments. A determination by the court that it is untrue that Mr. Warren "would have worked [in this judicial district] but for the alleged unlawful employment practice"—and thus that venue does not lie in the Northern District of Alabama—would "amount to an adjudication on the merits of the case," *see Micor Indus.*, 2018 WL 804303, at *4. Because the court, accepting Mr. Warren's allegations as true, finds venue plausible, it will not resolve these disputes at this stage.

## II. Proper Defendants

The only proper defendant here is the United States Secretary of Defense, Pete Hegseth. Where a federal employee files suit for employment actions taken by a

federal agency, only "the head of the department, agency, or unit, as appropriate, shall be the defendant." 42 U.S.C. § 2000e-16(c). *See also Canino v. U.S. EEOC*, 707 F.2d 468, 472 (11th Cir. 1983) (holding that "the head of the agency involved is the only appropriate defendant in a Title VII action").[5] Accordingly, all claims against Defendants Department of Defense and Defense Intelligence Agency are due to be **DISMISSED**.

### III.       Administrative Exhaustion

Before suing their employer for discrimination in federal court, a federal employee must seek relief from the agency where the alleged discrimination occurred. 29 U.S.C. § 794a(a)(1); 42 U.S.C. § 2000e-16(b)-(c); 29 C.F.R. §§ 1614.105(a)(1), 1614.407; *Love v. Pullman*, 404 U.S. 522, 523 (1972); *Jimenez v. U.S. Att'y Gen.*, 146 F.4th 972, 988–89 (11th Cir. 2025). "The purpose of this exhaustion requirement is that the [agency] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Gregory v. Ga.*

---

[5] The 42 U.S.C. § 2000e–16(c) limitation that civil actions may only be brought against the "head of the department, agency, or unit" applies to claims of discrimination under the Rehabilitation Act as well. *See Mullins v. Crowell*, 228 F.3d 1305, 1309 n.8 (11th Cir. 2000) (requiring compliance with the head-of-agency requirement in a disability discrimination suit brought under the Rehabilitation Act). *See also Farrell v. U.S. Dep't of Just.*, 910 F. Supp. 615, 618 (M.D. Fla. 1995) (noting that this is the case because 29 U.S.C. § 794a borrows the procedures and remedies of Title VII). The head-of-agency requirement does not address claims brought under the U.S. Constitution rather than Title VII, but that distinction is immaterial here, as Mr. Warren's claims under the Fifth Amendment are improper and therefore due to be dismissed. *See* Section IV, *infra*.

*Dep't of Hum. Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (internal quotation marks omitted); *see also Ramirez v. Sec'y, U.S. Dep't of Transp.*, 686 F.3d 1239, 1243 (11th Cir. 2012). The plaintiff bears the burden of proving that he exhausted his administrative remedies. *Reed v. Winn Dixie, Inc.*, 677 F. App'x 607, 610 (11th Cir. 2017) (per curiam); *Jackson v. Seaboard Coast Line R.R.*, 768 F.2d 992, 1010 (11th Cir. 1982).

A federal employee who believes he has been discriminated against begins the process for an individual EEO complaint by contacting the EEO counselor at the agency where he is employed "within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). Next, counseling with the EEO counselor must normally be completed within thirty days of the date the employee first contacted the EEO Office. *Id.* § 1614.105(d). If this counseling does not resolve the matter, then the EEO counselor will issue a notice to the aggrieved employee advising him that he has the right to file a formal complaint within fifteen days of the receipt of the notice. *Id.* The employee then has fifteen days to file a formal discrimination complaint with the employing agency. *Id.*; *see also id.* § 1614.106(b).

The agency responds in one of two ways: it (1) accepts the complaint and investigates the employee's allegations, or (2) dismisses the complaint on one of the grounds articulated in 29 C.F.R. § 1614.107. Grounds for dismissal include failure to state a claim and failure to comply with applicable time limits. 29 C.F.R. §

14

1614.107(a)(1)–(2). An agency normally has 180 days from the filing of the complaint to investigate. *Id.* §§ 1614.106(e)(2); 1614.108(e). Barring an applicable exception, "the agency shall provide the complainant with a copy of the investigative file" within 360 days after the filing of the original complaint. *Id.* § 1614.108(f). The employee may then request either (1) a hearing and decision by an EEOC administrative judge or (2) an immediate final agency decision. *Id.* § 1614.108(f). "When a Complainant requests a hearing, the Commission shall appoint an administrative judge to conduct a hearing in accordance with [§ 1614.109]," which includes issuing discovery orders. *See id.* § 1614.109(d).

After the administrative judge has issued a decision, the agency shall issue a final order within forty days. *Id.* § 1614.110(a). The agency's final order or decision also notifies the employee of their right to appeal to the EEOC, the right to file a civil action in federal district court, the name of the proper defendant in any such lawsuit, and the applicable time limits for appeals and lawsuits. *Id.* §§ 1614.110(a)–(b). Both the employee and the agency have the right to appeal to the EEOC. *Id.* §§ 1614.401–05. The employee can file a civil action in federal district court on claims raised in the administrative complaint within ninety days of the agency's final action or after 180 days have passed from the date of filing the complaint if the agency has not taken final action. *Id.* § 1614.407(a), (b).

15

An employee may amend her EEO charge "to clarify and amplify allegations" or allege "additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge." *Id.* § 1601.12(b). "Allegations of new acts of discrimination that are offered as the essential basis for judicial review must nonetheless be presented to the agency [prior to filing suit]." *Basel v. Sec'y of Def.*, 507 F. App'x 873, 876 (11th Cir. 2013) (per curiam). The Eleventh Circuit has repeatedly "cautioned that allegations of new acts of discrimination are inappropriate" for judicial review. *Batson v. Salvation Army*, 897 F.3d 1320, 1327 (11th Cir. 2018).

### A. Timeliness

Secretary Hegseth argues that Mr. Warren may not proceed with any of his claims because (1) he brings suit too late for consideration of claims raised in his First EEO Complaint, and (2) he brings suit too early for consideration of claims raised in his Second EEO Complaint. (*See* Doc. 35 at 16, 17). Secretary Hegseth is correct on the former but incorrect on the latter.

First, any claims Mr. Warren brought in his First EEO Complaint are time-barred. The Agency dismissed that complaint as untimely because Mr. Warren acknowledged receipt of the notice of his right to sue on April 11, 2022, but he did not file his formal complaint until May 3, 2022, or about two weeks after the statutory fifteen-day filing window closed. (Doc. 35-7 at 1–3; Doc. 35-8 at 2). Mr.

16

Warren appealed that dismissal, and the EEOC affirmed it on September 28, 2022. (*See* Doc. 35-8). Mr. Warren had ninety days from receipt of the EEOC's decision to file a lawsuit on the bases raised in his May 2022 EEOC Complaint, 29 C.F.R. § 1614.407(c); (doc. 35-8 at 3), but he did not file this case until more than two years later, (*see* doc. 1). Mr. Warren therefore forfeited any remaining opportunity for relief on the bases raised in his May 2022 complaint. *See* 29 C.F.R. § 1614.407; *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 102 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the [statutorily-allowed time] period after the discrete discriminatory act occurred."). Thus, any discrete acts alleged in Mr. Warren's First EEO Complaint may not now serve as a basis for suit, even if realleged in his Second EEO Complaint.

Second, contrary to Secretary Hegseth's argument, Mr. Warren has not prematurely brought suit based on his Second EEO Complaint. Secretary Hegseth argues that under 29 C.F.R. § 1614.407(a), which requires that the plaintiff bring suit within ninety days of receiving a final agency action, Mr. Warren prematurely brought this lawsuit before receiving a final agency decision on his Second EEO

17

Complaint.[6] However, Secretary Hegseth's argument ignores 29 C.F.R. § 1614.407(b), which allows a plaintiff to bring a lawsuit "[a]fter 180 days from the date of filing an individual or class complaint if agency final action has not been taken." *Id.* Here, Mr. Warren filed his second EEO Complaint on October 21, 2022, (*see* doc. 35-9), and he did not bring this action until October 28, 2024, (*see* doc. 1), well beyond the requisite 180-day waiting period. Thus, Mr. Warren did not bring this action prematurely.

The result of these two conclusions is that Mr. Warren may now bring suit, but only—absent an exception—based upon discrete acts that were raised in his Second EEO Complaint but not his First EEO Complaint.

### B. Count I—Retaliation

Mr. Warren's bases for his retaliation claim include the following alleged actions by the DIA: (1) "revoking his system access," (2) "placing him on leave without pay," (3) "spreading false narratives," and (4) "constructively terminating his employment." (Doc. 27, ¶ 30).

The first basis for Mr. Warren's retaliation claim—revocation of his system access—is untimely because he included it in his First EEO Complaint. (*See* Doc.

---

[6] Mr. Warren filed this case in October 2024, (doc. 1), before the administrative judge issued an order on December 10, 2024, and before the EEOC issued its Final Agency Order adopting the administrative judge's opinion on December 31, 2024.

35-6).[7] Conversely, Mr. Warren did not raise his fourth basis—constructive termination—in his First EEO Complaint, (*see id.*), but he did raise it in his Second EEO Complaint, (*see* Doc. 35-10 at 1). Thus, this basis is not barred.

Mr. Warren never raised his second ("placing him on leave without pay") or third ("spreading false narratives") bases in either his first or second administrative complaint. Thus, Mr. Warren would generally be barred from raising such claims for the first time in District Court. *See Basel*, 507 F. App'x at 876. Mr. Warren, however, argues that these two bases may be raised for the first time here because they "constitute either continuing hostile conduct or new acts of retaliation growing out of the initial accepted claims." (Doc. 37 at 4). Because both bases were cited in Mr. Warren's Second Amended Complaint as support for his retaliation cause of action, not his hostile work environment cause of action, (doc. 27, ¶¶ 30, 39), Mr. Warren's argument concerning "continuing hostile conduct" is inapplicable here.

As to the argument that they are new acts of retaliation growing out of the initial accepted claims, the Eleventh Circuit has held that "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge" because "the district court has ancillary jurisdiction

---

[7] Mr. Warren's May 2022 EEO Complaint states that he wants "[r]estrictions removed." (Doc. 25-6). As there are no other allusions to restrictions of any sort in either of Mr. Warren's EEO charges, the court reads this as a reference to revocation of system access. If it is not, Mr. Warren's basis of "revoking system access" is nonetheless improper, as it would constitute a new act of discrimination not suitable for judicial review. *See Batson*, 897 F.3d at 1327.

to hear such a claim when it grows out of an administrative charge that is properly before the court." *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988). However, a district court "may not consider a retaliation claim that was not first administratively exhausted where no other properly raised judicial claim exists to which the retaliation claim may attach." *Basel*, 507 F. App'x 873, 876 (11th Cir. 2013) (citing *Hargett v. Valley Fed. Sav. Bank*, 60 F.3d 754, 761–62 (11th Cir. 1995)). And the Eleventh Circuit has held that the district court properly dismisses an unexhausted retaliation claim when no connected discrimination charges are properly presented to the district court. *Hargett*, 60 F.3d at 761–62.

Here, there is no basis properly before the court from which Mr. Warren's unexhausted retaliation claims could "grow." Eleventh Circuit precedent on the issue presupposes that the retaliation claim is unexhausted because it grew out of an earlier charge that was already winding its way through the EEO or EEOC process when the subsequent retaliation—incurred for filing the initial EEO complaint—occurred. *See, e.g.*, *Basel*, 507 F. App'x at 876. Here, that would mean that the retaliatory actions at issue would have to have grown out of Mr. Warren's only remaining bases for suit—constructive termination, *see* Section III(B), *supra*, and impeding Mr. Warren's reassignment efforts, *see* Section III(C), *infra*. And because both of those bases are alleged only in the Second EEO Complaint, (*see* doc. 35-10 at 1), the retaliatory actions at issue would have to have occurred after Mr. Warren submitted

20

the Second EEO Complaint but before he filed this lawsuit. Mr. Warren's allegations do not indicate that this is the case.

Indeed, logically, it cannot be. The Second EEO Complaint was filed on October 21, 2022. (Doc. 35-9). Mr. Warren was approved for extended leave without pay beginning on October 1, 2022, twenty days *before* he submitted his EEO complaint. (*See* Doc. 35-1). Thus, Mr. Warren's unexhausted claim for being placed on leave without pay cannot have grown out of filing his Second EEO Complaint.

Likewise, the DIA's alleged "spreading of false narratives" about Mr. Warren appears to have begun well before he filed his Second EEO Complaint. In his operative Complaint in this case, Mr. Warren states that "leadership began spreading a false narrative about Mr. Warren. They claimed he had unilaterally moved to Huntsville without approval, that he had verbally assaulted an employee, and that he had been removed from the MSIC facility for refusing to leave." (Doc. 27, ¶ 3). He then alleges that "[t]his pattern of harassment and discrimination escalated" when the facility manager, Tanya Blackstone, claimed to feel threatened by Mr. Warren and called the police on him. *Id.*, ¶¶ 19–20. The confrontation with Ms. Blackstone occurred on February 10, 2022, and was one basis for Mr. Warren's First EEO Complaint. (*See* Doc. 35-7 at 2). Thus, the "spreading of false narratives" began on or before February 10, 2022, when Mr. Warren alleges that the DIA spread lies about his encounter with Ms. Blackstone. Because the unexhausted claim of "spreading of

false narratives" has its foundation more than *two years* before Mr. Warren submitted his Second EEO Complaint, such an alleged act of retaliation cannot have grown out of that Complaint.

Because neither of these bases can have grown out of a basis that is properly before the court, the court cannot consider them. *See Hargett*, 60 F.3d at 761–62. Accordingly, the only basis for Mr. Warren's retaliation claim that is properly before the court is constructive termination.

### C. Count II—Race Discrimination

Mr. Warren alleges disparate treatment by race based on the DIA (1) denying him telework privileges, (2) impeding his reassignment efforts, and (3) subjecting him to unwarranted disciplinary action. (Doc. 27, ¶ 35).

As to the first of these—denial of telework privileges—this could refer to either denial of telework privileges as a disability accommodation or as a spousal accommodation. Insofar as Mr. Warren claims that he was discriminated against on the basis of race by being denied a reasonable disability accommodation, such a claim is not timely because Mr. Warren raised this as a discrete act warranting relief in his First EEO Complaint. (*See* Doc. 35-7 at 2).

As to the denial of telework privileges as a spousal accommodation—and the broader effort to impede Mr. Warren's reassignment efforts—that basis cannot be time-barred on account of the First EEO Complaint—submitted in May 2022—

because Mr. Warren did not request a spousal accommodation until June 2022. (*See* Doc. 35-5). And Mr. Warren did raise denial of telework privileges as a spousal accommodation in his Second EEO Complaint. (*See* Doc. 35-10 at 1). Therefore, that basis may proceed.

Finally, nowhere in either of his EEO Actions does Mr. Warren claim that he was subjected to formal, unwarranted disciplinary actions. Thus, this basis is a "new act of discrimination" that was not previously presented to the Agency and is therefore not properly before the court. *See Batson*, 897 F.3d at 1327.

Accordingly, the only basis for Mr. Warren's race discrimination claim that is properly before the court is impeding his reassignment efforts.

### D. Count II—Disability Discrimination[8]

Mr. Warren's bases for disability discrimination are (1) denial of an allegedly already-approved reasonable accommodation and (2) a vaccine mandate. (Doc. 27, at 9 ¶¶ 35-36). Neither of these bases appear to have been included in either Mr. Warren's First or Second EEO Complaints, (docs. 35-7 at 1–2; 35-10 at 1; 35-11 at 1), and they are therefore "new acts of discrimination" unexhausted at the administrative level, warranting dismissal, *see Batson*, 897 F.3d at 1327. Insofar as Mr. Warren's "den[ial of] his approved accommodations" can be read to mean denial

---

[8] Mr. Warren brought both his race and disability discrimination claims in Count II. (Doc. 27 at 9). This is improper, but as his claim for disability discrimination is due to be dismissed in full, the point is moot.

of a telework accommodation, Mr. Warren raised his denial of reasonable telework accommodations as a basis for relief in his First EEO Complaint, and thus any opportunity for relief on that basis is time-barred. Accordingly, no basis for Mr. Warren's disability discrimination claim is properly before the court.

### E. Count III—Hostile Work Environment

Mr. Warren's bases for his hostile work environment claim are (1) "the spread of false narratives," (2) "unwarranted involvement of police at the Indian Head facility," (3) "daily monitoring," and (4) "discriminatory comments." (Doc. 27, ¶ 39). The second basis—involvement of police at the Indian Head facility—was pleaded in Mr. Warren's First EEO Complaint and is thus time-barred. Mr. Warren did not previously raise the remaining three bases in either his First or Second EEO Complaints and cannot now allege new acts of discrimination. *See Batson*, 897 F.3d at 1327. Accordingly, no basis for Mr. Warren's hostile work environment claim is properly before the court.

### IV.   Count IV—Fifth Amendment

"'Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.'" *King v. U.S. Gov't*, 878 F.3d 1265, 1267 (11th Cir. 2018) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)). The Civil Service Reform Act of 1978 ("CSRA"), Pub. L. No. 95-454, 91 Stat. 1111 (1978) (codified in scattered sections of 5 U.S.C.), comprises "a comprehensive system for reviewing personnel

action taken against federal employees." *United States v. Fausto*, 484 U.S. 439, 455 (1988). The CSRA was "designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Id.* at 445. "The comprehensive nature of the . . . CSRA indicates a clear congressional intent to permit federal court review as provided in the CSRA, or not at all." *Stephens v. Dep't of Health & Hum. Servs.*, 901 F.2d 1571, 1576 (11th Cir. 1990). "Therefore, outside of Title VII claims, both the Supreme Court and [the Eleventh Circuit] have concluded generally that the CSRA provides the exclusive procedure for challenging federal personnel decisions." *Hendrix v. Snow*, 170 F. App'x 68, 80 (11th Cir. 2006) (per curiam) (citing *Fausto*, 484 U.S. at 443, 454–55).

The Eleventh Circuit has held that "[c]onstitutional claims by federal employees are ordinarily preempted by the Act and must be addressed through the administrative procedures the CSRA establishes." *Ivey v. Paulson*, 222 F. App'x 815, 820 (11th Cir. 2007) (per curiam) (citing *Bush v. Lucas*, 462 U.S. 367, 388-90 (1983)). The Eleventh Circuit has specifically held that a federal employee cannot maintain a due process challenge against federal supervisors for violations of Fifth Amendment rights where Congress has provided a comprehensive remedial scheme—such as the CSRA—and the employee has access to alternative administrative remedies. *Wells v. Fed. Aviation Admin.*, 755 F.2d 804, 809–10 (11th Cir. 1985). "The purpose of denying a private cause of action to federal employees

25

is to ensure that they do not bypass comprehensive and carefully balanced statutory and administrative remedies in order to seek direct judicial relief," *Gleason v. Malcom*, 718 F.2d 1044, 1048 (11th Cir. 1983), yet that is precisely what Mr. Warren attempts to do. Because the CSRA provides the exclusive remedy for claims arising out of plaintiffs' federal employment, except where Congress has created an alternative statutory scheme such as Title VII, Mr. Warren's Fifth Amendment claim is preempted and must be dismissed.

## CONCLUSION

For the reasons stated herein, Defendant Pete Hegseth's Motion to Dismiss, (doc. 35), is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the motion to dismiss is **GRANTED** with respect to Defendants Department of Defense and Defense Intelligence Agency, and all claims against those Defendants are **DISMISSED**. With regard to Defendant Pete Hegseth, the motion to dismiss is **GRANTED** with respect to the following causes of action and specific bases therein:

1. **Count I**, Retaliation and Reprisal, with respect to (1) revoking Mr. Warren's system access, (2) placing him on leave without pay, and (3) spreading false narratives;

2. **Count II**, Discrimination (Race and Disability), with respect to (1) denying Mr. Warren telework privileges, (2) subjecting him to unwarranted

disciplinary action, (3) denial of an allegedly already-approved reasonable accommodation, and (4) enforcement of a vaccine mandate;

3. **Count III**, Hostile Work Environment, in its entirety; and

4. **Count IV**, Constitutional Violations (Fifth Amendment), in its entirety.

With regard to Defendant Pete Hegseth, the motion to dismiss is **DENIED** with respect to the following causes of action and specific bases therein:

1. **Count I**, Retaliation and Reprisal, with respect to constructively terminating Mr. Warren's employment.

2. **Count II**, Discrimination (Race and Disability), with respect to impeding Mr. Warren's reassignment efforts.

   **DONE** and **ORDERED** on April 7, 2026.

   _____
   **HAROLD D. MOOTY III**
   UNITED STATES DISTRICT JUDGE